IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff/Respondent,

vs.                            Nos.    CR 10-3461 JCH
                                        CIV 16-0697 JCH/LF

JOHN ANZURES,

        Defendant/Movant.

## PROPOSED FINDINGS OF FACT AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on John Anzures's Motion to Correct Sentence Pursuant to 28 U.S.C. § 2255.  Doc. 40.[1]  The Honorable Judith Herrera referred this case to me to recommend to the Court an ultimate disposition of the case.  No. CIV 16-0697 JCH/LF, Doc. 7.  Having reviewed the submissions of the parties and the relevant law, I recommend that the Court deny Anzures's motion.

## I.      Background Facts and Procedural Posture

On April 11, 2012, Anzures pled guilty to an indictment that charged him with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  *See* Docs. 4, 34, 36.  The probation officer who prepared Anzures's presentence report ("PSR") determined that Anzures's base offense level was 24 under USSG[2] § 2K2.1(a)(2) because he committed the offense after having sustained at least two prior felonies that were crimes of violence.  PSR ¶ 33.  Anzures received a four-level enhancement pursuant to USSG

---

[1] Citations to "Doc." are to the document number in the criminal case, case number CR 10-3461 JCH, unless otherwise noted.

[2] Anzures was sentenced using the 2011 version of the Sentencing Guidelines.  *See* PSR ¶ 32. All references to the Guidelines are to the 2011 version unless otherwise noted.

§ 2K2.1(b)(6) because he used or possessed the firearm in connection with another felony offense, namely aggravated burglary, kidnapping, armed robbery, and bribery of a witness. PSR ¶ 34. Without the armed career criminal enhancement, Anzures's adjusted offense level would have been 28. PSR ¶ 38.

However, because Anzures had three prior violent felony convictions, he was subject to an enhanced sentence as an armed career criminal under USSG § 4B1.4 and 18 U.S.C. § 924(e). PSR ¶ 39. The PSR relied on two prior convictions for aggravated assault with a deadly weapon and a commercial burglary conviction. *Id.* As a result, Anzures's offense level became 34. *Id.* He received a three-level reduction for acceptance of responsibility under USSG § 3E1.1. PSR ¶ 40. His total offense level was 31, and his criminal history category was VI, which resulted in an advisory guideline sentencing range of 188 to 235 months in prison. PSR ¶¶ 41, 58, 93. Because Anzures was considered an armed career criminal under 18 U.S.C. § 924(e)(1), he was subject to a mandatory minimum sentence of 180 months in prison, and his guideline imprisonment range was 188 to 235 months in prison, rather than the ten-year maximum sentence that otherwise would have been applicable. *See* PSR ¶¶ 92, 93; 18 U.S.C. § 924(a)(2).

Neither party objected to the PSR. *See* Doc. 38; Doc. 45 at 3. Pursuant to the plea agreement and Fed. R. Crim. P. 11(c)(1)(C), the government and Anzures had agreed that the appropriate sentence was 180 months in prison. Doc. 36 at 3. The Court accepted the plea agreement and imposed a sentence of 180 months. *See* Doc. 45 at 9–10; *see also* Doc. 39 at 2. The Court entered its judgment on July 16, 2012. *See* Doc. 39. Anzures did not appeal his sentence.

On June 24, 2016, Anzures filed a Motion to Vacate and Correct Sentence Pursuant to 28 U.S.C. § 2255 (and *Johnson v. United States*). Doc. 40. The government filed its response on

November 16, 2016, Doc. 48, and Anzures filed his reply on March 31, 2017, Doc. 58. The Court also permitted the government to file a surreply, to which Anzures responded on May 12, 2017. *See* Docs. 59-1, 61, 63.

On October 24, 2017, I directed the parties to file simultaneous supplemental briefs to address the Tenth Circuit's decision in *United States v. Snyder*, 871 F.3d 1122 (10th Cir. 2017). Doc. 65. In *Snyder*, the Tenth Circuit held that "it may be possible to determine that a sentencing court did <u>not</u> rely on the residual clause—even when the sentencing record alone is unclear—by looking to the relevant background legal environment at the time of sentencing." [3] *Id.* at 1128 (quoting *United States v. Geozos*, 870 F.3d 890, 896 (9th Cir. 2017)). The court further held that Snyder was not entitled to relief because it was clear, based on the relevant legal background, that "there would have been little dispute at the time of Snyder's sentencing that his two Wyoming burglary convictions involving occupied structures fell within the scope of the ACCA's enumerated crimes clause"—not the residual clause. *Id.* I asked the parties to address the question of whether, based on the relevant legal background at the time Anzures was sentenced, the Court could determine that the he was not sentenced using the ACCA's residual clause. *See* Doc. 65. The parties filed their supplemental briefs on November 13, 2017. Docs. 67, 69.

## II. Anzures's Claims and the Government's Response

Anzures argues that his prior aggravated assault convictions and his prior commercial burglary conviction under New Mexico law no longer qualify as violent felonies under the Armed Career Criminal Act (ACCA), and that his sentence therefore exceeds the statutory

---

[3] "[T]he relevant background legal environment is, so to speak, a 'snapshot' of what the controlling law was at the time of sentencing and *does not* take into account post-sentencing decisions that may have clarified or corrected pre-sentencing decisions." *Snyder*, 871 F.3d at 1129 (emphasis added).

maximum sentence.  Doc. 40.  He argues that because the Supreme Court held in *Johnson* that the ACCA's "residual clause" is unconstitutionally vague, he no longer has three prior felony convictions that qualify as violent felonies under either the "elements clause" or the "enumerated crimes clause" of the ACCA.  *See id*.  In response, the government argues that Anzures has at least three prior felony convictions that still qualify as violent felonies under the ACCA.  Doc. 48.  In addition to Anzures's two prior aggravated assault convictions and his prior commercial burglary conviction, the government also relies on Anzures's prior felony aggravated battery conviction.  *See id.*

In his supplemental brief, Anzures urges the Court to limit *Snyder* to its facts and refuse to extend its reasoning to his situation because it would perpetuate a misapplication of the law.  *See* Doc. 69.  The government argues that, under *Snyder*, the Court can consider the law in effect when Anzures was sentenced, and if binding precedent at that time established that any of his prior convictions constituted violent felonies, the Court may conclude that the sentencing court relied on that precedent in determining that Anzures qualified for the ACCA.  *See* Doc. 67.  Based on the analysis set forth in *Snyder*, I find that Anzures's prior commercial burglary conviction would have qualified as generic burglary in 2012 when he was sentenced.  But, even without resorting to the analysis in *Snyder*, Anzures still has three prior felonies that qualify as violent felonies under the ACCA.  Anzures therefore is not entitled to relief.

**III.**     **Discussion**

    A.   The Supreme Court's Decision in *Johnson II*

The ACCA provides, in pertinent part, that "[i]n the case of a person who violates section 922(g) of this title and has three previous convictions . . . for a violent felony . . . committed on occasions different from one another, such person shall be . . . imprisoned not less than fifteen

years . . . ." 18 U.S.C. § 924(e)(1). "[T]he term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year . . . that—(i) has as an element the use, attempted use, or threatened use of physical force against the person of another [the "elements clause"]; or (ii) is burglary, arson, or extortion, involves use of explosives [the "enumerated crimes clause"], or otherwise involves conduct that presents a serious potential risk of physical injury to another [the "residual clause"] . . . ." 18 U.S.C. § 924(e)(2)(B). In *Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015) (*Johnson II*), the Supreme Court struck down the residual clause as unconstitutionally vague, but it left intact the elements clause and the enumerated crimes clause.[4] The following year, the Court held that *Johnson II* announced a substantive rule that applied retroactively on collateral review. *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016). Thus, to be entitled to relief under *Johnson II*, a defendant must have been sentenced under the residual clause of the ACCA, not the elements clause or the enumerated crimes clause.

Anzures has four prior felony convictions that potentially qualify as violent felonies under the ACCA. *See* Doc. 36 at 4–5, 8–9 (plea agreement acknowledging and listing Anzures's prior felony convictions); Docs. 48-1, 48-2; PSR ¶¶ 39, 43, 44, 46, 53. They are two convictions for aggravated assault, one conviction for commercial burglary, and one conviction for aggravated battery, all under New Mexico law. *See id.* The probation officer who prepared the presentence report relied on the two convictions for aggravated assault and the commercial burglary conviction. PSR ¶ 39. Anzures objects to the Court considering his aggravated battery conviction. Doc. 58 at 7–10. But assuming that the Court can consider the aggravated battery

---

[4] The Supreme Court held in an earlier *Johnson* case—*Johnson v. United States*, 559 U.S. 133, 140 (2010)—that the term "physical force" as used in the elements clause of the ACCA "means *violent* force—that is, force capable of causing physical pain or injury to another person." (Emphasis in original.) To avoid confusion, I will refer to the 2010 case as *Johnson I* to distinguish it from the 2015 *Johnson* opinion striking down the residual clause of the ACCA (hereinafter referred to as *Johnson II*).

conviction, the parties agree that both it and the aggravated assault convictions must satisfy the ACCA's elements clause to qualify as a violent felony. *See* Doc. 40 at 4–7; Doc. 48 at 4–5, 13–17; Doc. 58 at 10–16. For Anzures's burglary conviction to qualify as a violent felony, it must constitute generic burglary under *Taylor v. United States*, 495 U.S. 575, 599 (1990). *See* Doc. 40 at 7–15; Doc. 48 at 5–13. The Court must apply the "categorical approach" to determine whether a prior conviction falls within the ACCA's elements clause or the enumerated crimes clause. *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013); *Taylor*, 495 U.S. at 599–602. To further complicate matters, the Tenth Circuit's recent decision in *Snyder*, 871 F.3d 1122, permits the Court to examine the state of the law at the time Anzures was sentenced to determine whether it's clear that the Court did <u>not</u> rely on the residual clause in sentencing him.

B.  The Tenth Circuit's Decision in *Snyder*

In *Snyder*, the defendant argued—just as Anzures argues here—that his prior burglary convictions "cannot sustain the ACCA sentencing enhancement." 871 F.3d at 1128. The Tenth Circuit determined that this argument "necessarily implies that the district court, in sentencing Snyder under the ACCA, concluded that his prior burglary convictions fell within the scope of the ACCA's residual clause," not the enumerated crimes clause. *Id.* The district court that considered Snyder's 2255 petition "found, as a matter of historical fact, that it did not apply the ACCA's residual clause in sentencing Snyder under the ACCA," and instead sentenced Snyder based on the enumerated crimes clause. *Id.*

The Tenth Circuit agreed with the district court that whether Snyder was sentenced under the residual clause was a finding, but noted that it was a finding that was based largely on legal conclusions. *Id.* at 1128–29. Thus, the court held that "it may be possible to determine that a sentencing court did <u>not</u> rely on the residual clause—even when the sentencing record alone is

unclear—by looking to the relevant background legal environment at the time of sentencing." *Id.* at 1128 (quoting *United States v. Geozos*, 870 F.3d 890, 896 (9th Cir. 2017)). Based on this analysis, the court held that Snyder was not entitled to relief because it was clear, based on the relevant legal background, that "there would have been little dispute at the time of Snyder's sentencing that his two Wyoming burglary convictions involving occupied structures fell within the scope of the ACCA's enumerated crimes clause"—not the residual clause. *Id.*

Here, Anzures was sentenced in April 2012, nearly two years after the Tenth Circuit's decision in *United States v. Ramon Silva*, 608 F.3d 663 (10th Cir. 2010). In *Ramon Silva*, the court examined the same New Mexico burglary statute that formed the basis of Anzures's commercial burglary conviction. *See id.* at 665 (examining N.M. STAT. ANN. § 30-16-3). In *Ramon Silva*, the court held that because New Mexico's burglary statute was broader than generic burglary, it would employ the modified categorical approach to determine the character of the defendant's burglary. 608 F.3d at 665–66. And because the indictment charged the defendant with entering "a structure, a shed," his crime constituted generic burglary. *Id.* at 666. The defendant therefore was subject to the ACCA's enhanced sentencing provisions under the enumerated crimes clause. *Id.* at 668–69.

Although the court in *Snyder* noted that this type of analysis "has since been abrogated by the Supreme Court's decision in *Mathis v. United States*, — U.S. —, 136 S. Ct. 2243 (2016)," *Snyder*, 871 F.3d at 1129 n.4, it nonetheless appears it would have been the analysis that the district court would have been required to employ at the time Anzures was sentenced. Thus, the question becomes whether, given the Tenth Circuit's decision in *Ramon Silva*, there is any dispute that when Anzures was sentenced, his prior burglary conviction fell within the scope of the ACCA's enumerated crimes clause, not the residual clause.

The court in *Ramon Silva* also examined the same New Mexico aggravated assault statute that is at issue here. Although the court focused on "'apprehension causing' aggravated assault" under N.M. STAT. ANN. § 30-3-2(A), the court held that this type of aggravated assault "create[d] a commensurate threat of physical force such that the crime qualifies as a violent felony under the ACCA." *Ramon Silva*, 608 F.3d at 670, 672. The court further held that "[p]urposefully threatening or engaging in menacing conduct toward a victim, with a weapon capable of causing death or great bodily harm, threatens the use of force capable of causing physical pain or injury," and "would always include as an element the threatened use of violent force." *Id.* at 672 (internal quotation marks omitted). This holding similarly raises the question of whether there is any dispute that when Anzures was sentenced, his prior aggravated assault conviction fell within the scope of the ACCA's elements clause, not the residual clause.

C.   <u>At the Time of Anzures's Sentencing, There is No Question that His Conviction for Commercial Burglary Fell Within the Enumerated Crimes Clause of the ACCA</u>.

In his supplemental brief, Anzures does not contest that his prior commercial burglary conviction would have constituted generic burglary under the analysis employed by *Ramon Silva*. *See generally* Doc. 69. Instead, he argues that the Court should not apply the *Snyder* analysis because it perpetuates a misapplication of the law, and because the record of his sentencing is so sparse. *See id.* at 2–7. He also argues that *Snyder's* holding should be limited because it misapplied the Ninth Circuit's reasoning in *Geozos*, on which *Snyder* relied. *Id.* at 7–10. Anzures's arguments make clear, however, that his challenge to his sentence—at least to the extent that his sentence is based on his prior commercial burglary conviction—is based on *Mathis*, not *Johnson II.*

1. *Employing the Analysis that the District Court Would have been Required to Employ in 2012, the Court can Determine that the Sentencing Court did not Rely on the Residual Clause in Finding that Anzures's Prior Burglary Conviction was a Violent Felony Under the ACCA.*

In *Taylor*, the Supreme Court held that an offense constitutes "burglary" under § 924(e) if, regardless of its exact definition, it has the basic elements of a "generic" burglary—i.e., an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime. 495 U.S. at 599. In determining whether a defendant's prior conviction meets this generic definition of burglary, the Court employs the categorical approach, which "look[s] only to the fact of conviction and the statutory definition of the prior offense." *Id*. at 602. If the statutory definition of the prior conviction "substantially corresponds to 'generic' burglary," the inquiry is at an end. *Id*. If the statutory definition of the prior conviction proscribes a range of conduct that is broader than generic burglary, the Court applies the modified-categorical approach, which "go[es] beyond the mere fact of conviction" and determines whether "the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant." *Id*. In "pleaded cases," the Court looks to "the statement of factual basis for the charge, shown by a transcript of plea colloquy or by a written plea agreement presented to the court, or by a record of comparable findings of fact adopted by the defendant upon entering the plea." *Shepard v. United States*, 544 U.S. 13, 20 (2005).

As already mentioned, Anzures was convicted under the exact same statute that was at issue in *Ramon Silva*, decided in 2010. *See Ramon Silva*, 608 F.3d at 665. That statute provides:

Burglary consists of the unauthorized entry of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, with the intent to commit any felony or theft therein.

A. Any person who, without authorization, enters a dwelling house with intent to commit any felony or theft therein is guilty of a third degree felony.

B. Any person who, without authorization enters any vehicle, watercraft, aircraft or other structure, movable or immovable, with intent to commit any felony or theft therein is guilty of a fourth degree felony.

N.M. STAT. ANN. § 30-16-3.  In *Ramon Silva*, the court noted that "New Mexico courts have interpreted the phrase 'other structure' in subsection B 'to require an enclosure similar to a vehicle, watercraft, aircraft, or dwelling.'"  608 F.3d at 665 (quoting *State v. Foulenfont*, 1995-NMCA-028, ¶ 11, 119 N.M. 788, 791, 895 P.2d 1329, 1332).  And because § 30-16-3(B) included the unlawful entry of locations that went beyond the generic definition of burglary, the court employed the modified categorical approach (as understood in 2010) and examined the "charging document, plea agreement, and plea colloquy to determine the character of [the defendant's] admitted burglary."  *Id.* at 665–66 (internal quotation marks omitted).

The indictment to which Ramon Silva pled guilty charged him with "enter[ing] a structure, a shed."  *Id.* at 666.  The defendant argued that a shed did not "satisfy the 'building or other structure' element in generic burglary" because it was not designed for human habitation or business and was not permanent.  *Id.*  The court rejected this argument.  It reasoned that Supreme Court precedent and its own cases made clear that the "building or structure" element of generic burglary was broad, and included "both buildings and less complete structures."  *Id.* at 668 (emphasis and internal quotation marks omitted).  It included "a building or other place designed to provide protection for persons or property against weather or intrusion, but does not include vehicles or other conveyances whose primary purpose is transportation."  *Id.* (quoting *United States v. Cummings*, 531 F.3d 1232, 1235 (10th Cir. 2008)).  The court held "that the 'building or other structure' element in generic burglary encompasses those burglaries that have been 'committed in a building or enclosed space . . ., not in a boat or motor vehicle.'"  *Id.* at 668–69 (quoting *Shepard*, 544 U.S. at 16).

Applying the analysis of *Ramon Silva* to this case, there can be little doubt that when Anzures was sentenced, his burglary conviction fell within the scope of the ACCA's enumerated crimes clause. Anzures pled guilty to an indictment that charged him with "enter[ing] a structure, New Mexico Storage and Lock, located at 220 Isleta SW, without authorization or permission, with intent to commit any felony or a theft therein," in violation of N.M. STAT. ANN. § 30-16-3(B). Doc. 40-1 at 1; Doc. 48-1 at 1, 3, 8–9. The indictment makes clear that the place Anzures entered was a structure (a business) designed to protect property from intrusion, and clearly was not a boat, vehicle, airplane, or other conveyance whose primary purpose was transportation. Thus, by application of the modified categorical approach as it existed in 2012, Anzures's commercial burglary conviction constituted generic burglary. The sentencing court did not rely on the residual clause in determining that Anzures's prior burglary conviction was a violent felony under the ACCA.

In his reply, Anzures relies heavily on Judge Parker's decision in *United States v. Barela*, CV 16-0339 JAP/LAM, Doc. 22, (D.N.M. Feb. 2, 2017), in which Judge Parker applied the analysis set forth in *Mathis v. United States*, 136 S. Ct. 2243 (2016) to hold that the defendant's prior convictions for commercial burglary under N.M. STAT. ANN. § 30-16-3(B) did not constitute generic burglary. *Barela*, however, was decided before the Tenth Circuit's decision in *Snyder*, 871 F.3d 1122, and did not address the question at issue here. There is no doubt that the Supreme Court's decision in *Mathis* abrogated the modified categorical approach employed by the Tenth Circuit in *Ramon Silva*, and that Anzures's commercial burglary conviction may not constitute generic burglary post-*Mathis*. The question here, however, is whether in 2012—four years before the *Mathis* decision—the sentencing court simply applied the straightforward analysis set forth in *Ramon Silva* to find that Anzures's prior burglary conviction constituted

generic burglary under the enumerated crimes clause of the ACCA. Given the relevant legal background, the sentencing judge would have had no reason to resort to the residual clause in finding that Anzures's commercial burglary conviction was a violent felony in 2012. And, as the government points out, there was no mention of the residual clause in either the presentence report or at the sentencing hearing, which further supports the conclusion that the court did not rely on the residual clause in sentencing Anzures.

2. *Mathis did not Announce a New Substantive Rule and is not Retroactively Applicable to Cases on Collateral Review.*

Anzures argues that the Court should not apply the reasoning of *Snyder* because it would perpetuate a misapplication of the law, and because the Tenth Circuit's decision in *United States v. Titties*, 852 F.3d 1257 (10th Cir. 2017) implicitly rejected the notion that post-sentencing opinions by the Tenth Circuit or Supreme Court cannot correct an earlier sentencing mistake. Anzures's argument is fundamentally flawed because it fails to recognize that any sentencing error in his case was made in 2012, and Anzures neither objected to the error at sentencing, nor did he challenge it on appeal. Although it may have been understandable that Anzures did not challenge the sentencing judge's conclusion that his prior commercial burglary conviction constituted generic burglary and fell within the enumerated crimes clause of the ACCA given the Tenth Circuit's decision in *Ramon Silva*, it is that decision—not a decision that his burglary conviction fell within the residual clause—that he is complaining about here.

As was true in *Snyder*, Anzures's § 2255 arguments with respect to his burglary conviction focus primarily on the applicability of the enumerated crimes clause. *See Snyder*, 871 F.3d at 1130. In other words, Anzures's claim is not truly a *Johnson II* claim, but instead is a claim under *Mathis*. *See id.* But the Tenth Circuit already has held, albeit in an unpublished decision, that *Mathis* did not announce a new substantive rule that is retroactively applicable to

cases on collateral review. *United States v. Taylor*, 672 F. App'x 860, 864 (10th Cir. 2016) (unpublished); *see also Dawkins v. United States*, 829 F.3d 549, 551 (7th Cir. 2016) (holding that *Mathis* did not announce a new rule that would allow a second or successive habeas petition).

Further, Anzures is collaterally attacking his sentence, not taking a direct appeal. This is a key difference from the situation in *Titties*. The Supreme Court decided *Mathis* while the defendant's direct appeal was pending in *Titties*. 852 F.3d at 1263. In general, Supreme Court decisions apply retroactively to convictions that are not yet final when the Supreme Court renders its decision. *See Giffith v. Kentucky*, 479 U.S. 314, 328 (1987) ("We therefore hold that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past."). Thus, the Tenth Circuit properly reviewed the defendant's sentence in *Titties* using the analysis announced in *Mathis* and found that the district court had incorrectly applied the modified categorical approach in imposing the defendant's sentence. *Titties*, 852 F.3d at 1266–75. Here, however, Anzures's sentence became final in 2012, several years before the *Mathis* decision. The rule with respect to cases on collateral review is different from the rule that applies to cases that are not yet final. "Unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Teague v. Lane*, 489 U.S. 288, 311 (1989). Thus, Anzures cannot invoke *Mathis* to collaterally attack his sentence unless the rule announced in *Mathis* falls within an exception. The Tenth Circuit already has held that no such exception applies. *Taylor*, 672 F. App'x at 864.

D. <u>Anzures's Convictions for Aggravated Assault With a Deadly Weapon Fall Within the Elements Clause of the ACCA Under Current Law</u>.

The government acknowledges that when Anzures was sentenced in 2012, the Tenth Circuit's decision in *Ramon Silva* did not necessarily determine that Anzures's aggravated assault convictions under New Mexico law would have satisfied the elements clause of the ACCA. Doc. 67 at 6–7. The government argues, however, that the Court need not address that question because the Tenth Circuit's decision in *United States v. Maldonado-Palma*, 839 F.3d 1244 (2016) is dispositive and compels the conclusion that Anzures's aggravated assault convictions are categorically violent felonies under the elements clause of the ACCA. Doc. 67 at 7–8. I agree with the government's analysis.

The New Mexico aggravated assault statute provides:

Aggravated assault consists of either:

A. unlawfully assaulting or striking at another with a deadly weapon;
B. committing assault by threatening or menacing another while wearing a mask, hood, robe or other covering upon the face, head or body, or while disguised in any manner, so as to conceal identity; or
C. willfully and intentionally assaulting another with intent to commit any felony.

Whoever commits aggravated assault is guilty of a fourth degree felony.

N.M. STAT. ANN. § 30-3-2. Anzures does not dispute that the statute is divisible, or that he was convicted under subsection A. *See* Doc. 40 at 2, 4; *see also Maldonado-Palma*, 839 F.3d at 1247 ("New Mexico's aggravated assault statute is a divisible statute because it sets out alternative elements for aggravated assault in three subsections."). Under subsection A, the least culpable conduct would require proof of an unlawful assault with a deadly weapon. In New Mexico, an assault is either:

A. an attempt to commit a battery upon the person of another;
B. any unlawful act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery; or
C. the use of insulting language toward another impugning his honor, delicacy or reputation.

N.M. STAT. ANN. § 30-3-1. Anzures argues that an assault under subsection C—an "insulting language" assault—while in possession of a deadly weapon, would not necessarily entail the use, attempted use, or threatened use of physical force against another person. Doc. 40 at 5–7. The Tenth Circuit's decision in *Maldonado-Palma* forecloses Anzures's argument.

In *Maldonado-Palma*, 839 F.3d at 1250, the Tenth Circuit held that New Mexico aggravated assault with a deadly weapon is categorically a crime of violence under USSG § 2L1.2's elements clause, which is identical to the ACCA's elements clause. *Compare* USSG § 2L1.2, comment. (n.2) ("'Crime of Violence' means . . . any other offense . . . that has as an element the use, attempted use, or threatened use of physical force against the person of another") *with* 18 U.S.C. § 924(e)(2)(B)(i) ("the term 'violent felony' means any crime . . . that[] has as an element the use, attempted use, or threatened use of physical force against the person of another"). The court specifically rejected the argument that Anzures makes here, that is, "that assaulting someone by using insulting language while possessing a deadly weapon would qualify as aggravated assault under N.M. STAT. ANN. § 30-3-2(A), but it does not have as an element the use, attempted use, or threatened use of physical force against the person of another." *Maldonado-Palma*, 839 F.3d at 1249 (footnote omitted). The court explained that because the offense required that the perpetrator employ a deadly weapon in committing the assault, the crime was categorically a crime of violence. *Maldonado-Palma*, 839 F.3d at 1250. The use of a weapon "capable of producing death or great bodily harm . . . necessarily threatens the use of physical force." *Id.* at 1250. And although *Maldonado-Palma* involved the

application of USSG § 2L1.2's definition of "crime of violence" rather than the definition of a "violent felony" in the ACCA, the language of the elements clause in both provisions is so similar that the court has used precedents under one as guidance for interpreting the other. *Maldonado-Palma*, 839 F.3d at 1248; *Ramon Silva*, 608 F.3d at 671.

Similarly, in *Ramon Silva*, 608 F.3d at 670–71, the court held that New Mexico's "apprehension causing" aggravated assault statute qualified as a violent felony under the elements clause of the ACCA. Even though the assault statute could be violated without any actual physical contact or violence perpetrated against the victim, the conduct it criminalized "'could always lead to . . . substantial and violent contact, and thus . . . would always include as an element' the threatened use of violent force." *Id.* at 672 (quoting *Treto-Martinez*, 421 F.3d at 1160); *see also Taylor*, 843 F.3d at 1224 (noting that "regardless of the type of dangerous weapon that is employed by a particular defendant, the use of a dangerous weapon during an assault or battery always constitutes a sufficient threat of force to satisfy the [force] clause" (internal quotation marks omitted)).

Anzures suggests that the Court need not follow *Maldonado-Palma* and *Ramon Silva* because in both, the Tenth Circuit misinterpreted New Mexico state law. *See* Doc. 58 at 1–5. But this Court is bound by the Tenth Circuit's interpretation of New Mexico state law unless the New Mexico Supreme Court issues an intervening contrary decision. *See Wankier v. Crown Equipment Corp.*, 353 F.3d 862, 866 (10th Cir. 2003) ("when a panel of this Court has rendered a decision interpreting state law, that interpretation is binding on district courts in this circuit, and on subsequent panels of this Court, unless an intervening decision of the state's highest court has resolved the issue"). Even if I agreed with Anzures that the New Mexico Court of Appeals' decision in *State v. Branch*, 2016-NMCA-071, 387 P.3d 250, *cert. granted*, No. 35,951 (Jul. 18,

2016), was contrary to the Tenth Circuit's decisions in *Maldonado-Palma* and *Ramon Silva*, the

Tenth Circuit decided *Maldonado-Palma* after the New Mexico Court of Appeals decision in

*Branch*, and the New Mexico Supreme Court has not yet issued its decision. Thus, there is no

intervening decision of the New Mexico Supreme Court that would permit this Court to decline

to follow *Maldonado-Palma* or *Ramon Silva*. Anzures's prior New Mexico convictions for

aggravated assault with a deadly weapon are categorically violent felonies under the elements

clause of the ACCA.

     E.   <u>Anzures's Prior Conviction for Aggravated Battery also Qualifies as a Violent Felony
Under the Elements Clause of the ACCA</u>.

Although it may not be necessary to reach this issue, the government also urges the Court

to find that if Anzures's commercial burglary conviction can no longer serve as a predicate

offense for the imposition of the enhanced penalties under the ACCA, Anzures has another

qualifying conviction, that is, his 1993 conviction for felony aggravated battery. *See* Doc. 48 at

13–17; Doc. 48-2; PSR ¶ 43. Anzures argues that the government waived this argument by not

relying on this conviction when he was sentenced in 2012. Doc. 58 at 7–10; Doc. 63 at 1–3. He

further argues that felony aggravated battery does not qualify as a violent felony. Doc. 58 at 10–

16; Doc. 63 at 4–5. For the following reasons, I agree with the government. If the Court erred

by relying on Anzures's commercial burglary conviction to enhance his sentence under the

ACCA, any error was harmless because his aggravated battery conviction is categorically a

violent felony under the elements clause of the ACCA.

     1.   *The Government did not Waive its Ability to Rely on Anzures's Aggravated
Battery Conviction as an ACCA-Qualifying Offense*.

   There is no question that harmless error analysis applies to § 2255 proceedings. *United*

*States v. Dago*, 441 F.3d 1238, 1246 (10th Cir. 2006) (holding that the *Brecht* standard of

harmless error review—whether the error had a substantial and injurious effect—applies to § 2255 petitions). Although Anzures argues that the government should have objected to the presentence report if it had intended to rely on the aggravated battery conviction in addition to the three other convictions that everyone at the time agreed qualified Anzures for the ACCA enhancement, *see* Doc. 58 at 8, there was no reason for the government to do so when Anzures was sentenced in 2012. *See United States v. Richardson*, 13-CR-353 WJM, 2016 WL 6600242, *4–*5 (D. Colo. Nov. 8, 2016) (unpublished) (government does not have duty to prove crime-of-violence status for every possible predicate offense when defendant does not dispute that enhancement applies); *see also United States v. Garcia*, 07-CR-788 JB, — F. Supp. 3d —, 2017 WL 2271421, *19–*21 (D.N.M. Jan. 31, 2017) (holding that government did not waive its right to rely on robbery as an ACCA-qualifying conviction by not objecting to PSR that did not include it as a predicate offense). Here, the PSR listed three predicate offenses for the application of the ACCA enhancement which, at the time, everyone agreed were violent felonies. *See* PSR ¶ 39. Anzures did not object to the PSR or the application of the ACCA enhancement. Doc. 45 at 3. The government had no reason to insist at the time that the Court also consider a fourth potentially ACCA-qualifying offense when Anzures was sentenced, and it did not waive its right to ask the court to consider that offense now.

Anzures admitted in his plea agreement that he had been convicted of aggravated battery with a deadly weapon in New Mexico in case number CR-1992-0085. Doc. 36 at 8. The PSR included that offense in the list of Anzures's prior adult convictions, without objection from Anzures. PSR ¶ 43; Doc. 45 at 3. Now that Anzures *is* challenging whether he qualifies for the ACCA enhancement, the Court's consideration of this aggravated battery conviction does not have a substantial and injurious effect on Anzures, and therefore does not meet the *Brecht*

standard. He is in the same position now as he would have been in 2012 had he challenged then whether his aggravated assault and commercial burglary convictions qualified as violent felonies. Whether his aggravated battery conviction is a violent felony is a purely legal question that is based only on the New Mexico state court documents submitted to prove the existence of the conviction (to which Anzures already admitted in his plea agreement) and the statute of conviction. The Court therefore will consider whether Anzures's aggravated battery conviction qualifies as a violent felony.

> 2. *Anzures's Prior Felony Aggravated Battery Conviction is Categorically a Violent Felony Under the ACCA.*

New Mexico's aggravated battery statute provides:

A.  Aggravated battery consists of the unlawful touching or application of force to the person of another with intent to injure that person or another.
B.  Whoever commits aggravated battery, inflicting an injury to the person which is not likely to cause death or great bodily harm, but does cause painful temporary disfigurement or temporary loss or impairment of the functions of any member or organ of the body, is guilty of a misdemeanor.
C.  Whoever commits aggravated battery inflicting great bodily harm or does so with a deadly weapon or does so in any manner whereby great bodily harm or death can be inflicted is guilty of a third degree felony.

N.M. STAT. ANN. § 30-3-5. Because the statute differentiates between misdemeanor offenses in subsection B and third degree felonies in subsection C, it is divisible. *Mathis*, 136 S. Ct. at 2256 ("If statutory alternatives carry different punishments, then under *Apprendi* they must be elements."). Anzures was convicted of aggravated battery in violation of N.M. STAT. ANN. §§ 30-3-5(A) & (C). *See* Doc. 48-2 (plea agreement and judgement identifying offense to which Anzures pled guilty). The minimum culpable conduct under this statute requires the unlawful touching of another with the intent to injure that person. N.M. STAT. ANN. § 30-3-5(A). In addition, section 30-3-5(C) requires proof of one of the following: (i) that the battery caused great bodily harm; (ii) that the battery was accomplished with the use of a deadly weapon; or (iii)

that the battery was accomplished in a manner whereby great bodily harm could be inflicted. N.M. STAT. ANN. § 30-3-5(C); *see also* N.M. R. ANN., Crim. UJI 14-322, 14-323 (essential elements instructions for felony versions of aggravated battery). Although the state court documents specify that Anzures's aggravated battery conviction involved the use of a deadly weapon, *see* Doc. 48-2, it is unclear whether subsection C is itself divisible under *Mathis*, or whether the three options listed in § 30-3-5(C) are merely alternative means of committing third degree aggravated battery. The Court need not decide that question because no matter how committed, a third degree aggravated battery in violation of N.M. STAT. ANN. § 30-3-5(C) qualifies as a violent felony under *Johnson I*.

First, the unlawful touching of a person with the intent to injure that person, and that either causes great bodily harm to the person or is otherwise accomplished in a manner whereby great bodily harm could be inflicted, is a violent felony. State law defines "great bodily harm" as "an injury to the person which creates a high probability of death; or which causes serious disfigurement; or which results in permanent or protracted loss or impairment of the function of any member or organ of the body." N.M. STAT. ANN. § 30-1-12(A). Because the battery caused great bodily harm or was done in a manner whereby great bodily harm could be inflicted, the battery necessarily involved "force capable of causing physical pain or injury to another person" as required by *Johnson I*. 559 U.S. at 140.

Second, aggravated battery with a deadly weapon also qualifies as a violent felony under the ACCA. The Tenth Circuit's decision in *Maldonado-Palma*, 839 F.3d 1244, is determinative on this point. As discussed above, the court in *Maldonado-Palma* considered whether a New Mexico conviction for aggravated assault with a deadly weapon categorically constituted a

"crime of violence" for the purposes of U.S.S.G. § 2L1.2(b)(1)(A)(ii).[5]  *Id.* at 1246–50.  The

sentencing guidelines definition of "crime of violence" is identical to the relevant ACCA

provision and also is interpreted pursuant to the modified categorical approach outlined above.

*See United States v. Ventura-Perez*, 666 F.3d 670, 673 (10th Cir. 2012).  In *Maldonado-Palma*,

the court first confirmed that, under New Mexico law, aggravated assault with a deadly weapon

requires use of the deadly weapon—mere possession does not suffice to satisfy the elements.

839 F.3d at 1249–50.  After reviewing the New Mexico definition of "deadly weapon," the court

concluded that employing such a weapon "necessarily threatens the use of physical force, i.e.,

'force capable of causing physical pain or injury to another person.'"  *Id.* at 1250 (quoting

*Johnson I*, 559 U.S. at 140); *see also Ramon Silva*, 608 F.3d. at 669–71.

        As with aggravated assault with a deadly weapon, aggravated battery with a deadly

weapon under New Mexico law requires proof of the *use* of a deadly weapon, not mere

possession.  *See* N.M. STAT. ANN. § 30-3-5(C); *see also* N.M. R. ANN., Crim. UJI 14-322

(instructing that aggravated battery with a deadly weapon requires proof that the defendant

"touched or applied force to" the victim with a deadly weapon and that "[t]he defendant *used*" a

deadly weapon (emphasis added)).  The logic in *Maldonado-Palma* therefore compels the

conclusion that a New Mexico conviction for aggravated battery with a deadly weapon

categorically qualifies as a violent felony under the ACCA.  In fact, given that *Maldonado-*

*Palma* involved only an assault, and this conviction involved a completed battery, the logic

_____

[5] The guideline amendments made effective November 1, 2016 eliminated the relevant text of
this portion of the guidelines, which previously instructed the sentencing court to increase a
defendant's base offense level if "the defendant previously was deported, or unlawfully remained
in the United States, after a conviction for a felony that is . . . a crime of violence . . . ."  *See*
Amendment 802, USSG App. C, Supp. (Nov. 1, 2016).  The amendment does not affect this
analysis.

applies with even greater force. Furthermore, the Supreme Court itself in *Johnson I* cited with approval Black's definition of "violent felony" as "a crime characterized by extreme physical force, such as . . . *assault and battery with a dangerous weapon*" in parsing the meaning of the ACCA's force clause, which further supports this conclusion. 559 U.S. at 140–41 (emphasis added).

Anzures argues that New Mexico felony aggravated battery cannot qualify as a violent felony because it only requires proof of "mere touching, however slight." Doc. 58 at 11. He asserts that the additional elements of felony aggravated battery do not transform the offense into a violent felony. *Id.* I disagree.

Although simple battery is a necessary element of felony aggravated battery, *see* Doc. 58 at 11, that does not mean that felony aggravated battery does not constitute a violent felony. Simple battery is a misdemeanor crime distinct from the aggravated battery statute at issue here, which is a felony. *Compare* N.M. STAT. ANN. § 30-3-4 (codifying common law battery and stating "[w]hoever commits battery is guilty of a petty misdemeanor") *with* N.M. STAT. ANN. §§ 30-3-5(A), (C) (describing felony aggravated battery). One "key distinction between the two battery statutes is the mens rea requirement." *State v. Skippings*, 2011-NMSC-021, ¶ 14, 150 N.M. 216, 258 P.3d 1008, 1012. "Under the aggravated battery statute, it must be established that the perpetrator possessed the specific intent to injure that person or another." *Id.* Felony aggravated battery also requires proof either that the perpetrator touched the victim with a deadly weapon, or that the perpetrator touched the victim in a way that caused great bodily harm or in a way that likely would result in death or great bodily harm. N.M. STAT. ANN. § 30-3-5(C). Anzures's argument ignores these additional elements of felony aggravated battery. When

viewed together, the elements of felony aggravated battery require "violent force," not merely a touch.

The elements of felony aggravated battery involving great bodily harm are as follows:

1. The defendant touched or applied force to the victim.
2. The defendant intended to injure the victim or another.
3. The defendant either caused great bodily harm to the victim or acted in a way that would likely result in death or great bodily harm to the victim.

N.M. R. ANN., Crim. UJI 14-323.  "Great bodily harm means an injury to a person which creates a high probability of death or results in serious disfigurement or results in loss of any member or organ of the body or results in permanent or prolonged impairment of the use of any member or organ of the body."  N.M. R. ANN., Crim. UJI 14-131 (brackets and footnote omitted).

The elements of felony aggravated battery with a deadly weapon are as follows:

1. The defendant touched or applied force to the victim with a deadly weapon.
2. The defendant intended to injure the victim or another.

N.M. R. ANN., Crim. UJI 14-322.  An object is a deadly weapon if, when used as a weapon, it could cause death or great bodily harm.  *Id.*

Thus, the question with respect to the three means of committing aggravated battery is whether the additional elements—that the defendant acted with the intent to injure and either caused great bodily harm, acted in a way that likely would cause death or great bodily harm, or used a deadly weapon—necessarily involve the use of violent force.  *See United States v. Taylor*, 843 F.3d 1215, 1223 (10th Cir. 2016) (although *simple* battery does not satisfy the elements clause because it could be accomplished by only the slightest touch, the question is whether battery that includes the aggravating element of a deadly weapon is sufficient to satisfy the violent force requirement).  Tenth Circuit precedent evaluating similar statutes compels the conclusion that these additional elements satisfy the violent force requirement of the ACCA.

For example, in *United States v. Treto-Martinez*, 421 F.3d 1156, 1160 (10th Cir. 2005), the Tenth Circuit held that Kansas aggravated battery satisfied the force clause of the Guidelines.[6] Conviction under one prong of the statute required "physical contact . . . whereby great bodily harm, disfigurement or death can be inflicted." *Id.* "[I]t is clear," the court held, "that a violation of this provision" suffices to satisfy the force clause. *Id.* "No matter what the instrumentality of the contact, if the statute is violated by contact that can inflict great bodily harm, disfigurement or death, it seems clear that, at the very least, the statute contains as an element the 'threatened use of physical force.'" *Id.* This prong of the Kansas aggravated battery statute is similar to the requirement under the New Mexico felony aggravated battery statute that the defendant "caused great bodily harm" or "acted in a way that would likely result in death or great bodily harm." *See* N.M. R. ANN., Crim. UJI 14-323.

With respect to aggravated battery involving the use of a deadly weapon and as already discussed, in *Maldonado-Palma*, 839 F.3d at 1250, the court held that New Mexico aggravated assault with a deadly weapon is categorically a crime of violence under the Sentencing Guidelines' force clause, which is identical to the ACCA's force clause. The use of a weapon

---

[6] Although *Treto-Martinez* pre-dates *Johnson I*, the court in *Treto-Martinez* did not apply a lesser standard of "physical force" in interpreting the force clause. *Compare Treto-Martinez*, 421 F.3d at 1159 (holding that "[a]lthough not all physical contact performed in a rude, insulting[,] or angry manner would rise to the level of physical force," (i.e., more than mere touching is required), such contact would satisfy the force clause if carried out with a deadly weapon), *with Johnson I*, 559 U.S. at 140 (requiring more than mere touching to satisfy the force clause). Therefore, *Johnson I* did not diminish the precedential value of *Treto-Martinez*. Instead, *Johnson I* resolved a split among the circuits as to whether mere touching could satisfy the force clause—essentially affirming the Tenth Circuit's approach. *See generally United States v. Hays*, 526 F.3d 674, 677–81 (10th Cir. 2008) (discussing the circuit split); *id.* at 684 n.4 (Ebel, J., dissenting) (also discussing the circuit split). The Supreme Court held that mere touching is not enough, which is consistent with earlier Tenth Circuit decisions. *See, e.g.*, *United States v. Venegas-Ornelas*, 348 F.3d 1273, 1275 (10th Cir. 2003) ("Force, as used in the definition of a crime of violence, is synonymous with destructive violent force."); *Hays*, 526 F.3d at 681 ("[P]hysical force in a crime of violence[] must, from a legal perspective, entail more than mere contact. Otherwise, *de minimis* touchings could [suffice]." (internal quotation marks omitted)).

"capable of producing death or great bodily harm . . . necessarily threatens the use of physical force." *Id.* Similarly, in *Taylor*, 843 F.3d at 1224, the court held that "regardless of the type of dangerous weapon that is employed by a particular defendant, the use of a dangerous weapon during an assault or battery *always* constitutes a sufficient threat of force to satisfy the [force] clause." (Internal quotation marks omitted; emphasis added.)

Based on these cases, I find that New Mexico felony aggravated battery requires the use of physical force required by *Johnson I*. Conviction under New Mexico's felony aggravated battery statute requires more than a mere touching. It requires the intent to injure and commission in a manner whereby great bodily harm is inflicted, or death or great bodily harm could be inflicted, or where a deadly weapon is used. *See* N.M. STAT. ANN. § 30-3-5(C). A battery committed in a manner that could inflict great bodily harm necessarily requires "force capable of causing physical pain or injury." *Johnson I*, 559 U.S. at 140; *Treto-Martinez*, 421 F.3d at 1160. Likewise, a battery committed with the use of a deadly weapon "always constitutes a sufficient threat of force to satisfy the [force] clause." *Taylor*, 843 F.3d at 1224 (internal quotation marks omitted). The additional requirements of felony aggravated battery— essentially, that serious bodily injury did or could have occurred, or that a deadly weapon was used—put the statute squarely in the range of conduct that the Tenth Circuit has found satisfies the physical force requirement of the elements clause. Several other judges in this District have reached the same conclusion.[7]

---

[7] *E.g.*, *Manzanares v United States*, 16-cv-0599 WJ/SMV, Doc. 21 at 18–24 (D.N.M. Sept. 6, 2017); *Pacheco v. United States*, 16-cv-0341 WJ/CG, Doc. 15 at 8–9 (D.N.M. June 1, 2017); *Sanchez v. United States*, 16-cv-0659 JAP/GBW, Doc. 20 at 24–27 (D.N.M. July 5, 2017); *Sedillo v. United States*, 16-cv-0426 MCA/LAM, Doc. 18 at 13–16 (D.N.M. Mar. 6, 2017); *Vasquez v. United States*, 16-cv-0678 JAP/WPL, Doc. 11 at 8 (D.N.M. Jan. 10, 2017); *see also United States v. Folse*, 15-cr-2485 JB, 2017 WL 4481158, *20–*25 (D.N.M. Oct. 5, 2017) (New Mexico felony aggravated battery is a crime of violence under the § 4B1.2 of the Guidelines).

Anzures cites to three federal appellate cases that he believes compel a different result. *See* Doc. 58 at 12–15.  But these cases are readily distinguishable from this case.  Anzures first suggests that the Court should follow the First Circuit's reasoning in *United States v. Fish*, 758 F.3d 1, 9–17 (1st Cir. 2014), which held that the Massachusetts crime of assault and battery with a dangerous weapon (ABDW) does not constitute a crime of violence under 18 U.S.C. § 16(b).[8] Importantly, however, the government did not argue, and the First Circuit did not consider, whether Massachusetts ABDW was a crime of violence under 18 U.S.C. § 16(a), which is the subsection substantially identical to the elements clause in the ACCA.  *See Fish*, 758 F.3d at 9. In later cases, in which the government *did* make the argument that it eschewed in *Fish*, the First Circuit held that Massachusetts assault with a dangerous weapon (ADW)—a lesser included offense of ABDW—"has as an element the use, attempted use, or threatened use of physical force as required by the ACCA's Force Clause."  *United States v. Whindleton*, 797 F.3d 105, 116 (1st Cir. 2015); *see also United States v. Tavares*, 843 F.3d 1, 12–14 (1st Cir. 2016) (holding that Massachusetts ABDW constitutes a crime of violence under § 4B1.2(a)(1) of the Guidelines— which is identical to the elements clause in the ACCA).  Because *Fish* did not address whether ABDW constituted a crime of violence under 18 U.S.C. § 16(a)—the subsection nearly identical to the ACCA's elements clause—it is not on point.

In *United States v. Hays*, 526 F.3d 674, 681 (10th Cir. 2008)—another federal appellate case on which Anzures relies, Doc. 58 at 13—the court held that a Wyoming battery statute did

---

[8] 18 U.S.C. § 16 provides:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

not satisfy the "use of physical force" element required to satisfy the definition of a "misdemeanor crime of domestic violence." However, the underlying statute in *Hays* could be violated by unlawfully touching someone in a rude, insolent or angry manner. *Id.* at 678. Because that provision could be violated by "any contact, however slight," the court held that it did not satisfy the force clause. *Id.* at 678–79. As discussed above, aggravated felony battery in New Mexico requires more than "any contact, however slight." *Hays* therefore does not control the outcome of this case.

Anzures also relies on the Tenth Circuit's decision in *United States v. Barraza-Ramos*, 550 F.3d 1246 (10th Cir. 2008). Doc. 58 at 14–15. In that case, the court evaluated whether a Florida aggravated battery statute that prohibited "actually and intentionally touching a pregnant woman against her will, actually and intentionally striking a pregnant woman against her will, or intentionally causing a pregnant woman bodily harm" constituted a crime of violence under the guidelines. *Id.* at 1249. Because the least culpable conduct in that statute involved merely "touching" a pregnant woman against her will, it did not necessarily involve the use of "physical force." *See id.* at 1251. The statute at issue here, however, is quite different. It requires the unlawful touching of another person with the intent to injure that person, *and* that the touching either causes great bodily harm; (ii) is accomplished with the use of a deadly weapon; or (iii) is accomplished in a manner whereby great bodily harm could be inflicted. N.M. STAT. ANN. § 30-3-5(C). Thus, the unlawful touching required under New Mexico's aggravated battery statute necessarily involves the use of violent, physical force.

All three of the means by which one can violate N.M. STAT. ANN. § 30-3-5(C) satisfy the force requirement set out in *Johnson I*. As such, Anzures's prior conviction under N.M. STAT. ANN. § 30-3-5(C) categorically constitutes a violent felony under the ACCA. Thus, if the

sentencing Court erred in relying on Anzures's commercial burglary conviction in applying the ACCA enhancement, any error did not have a substantial and injurious effect on his sentence and was therefore harmless.

## IV.    Recommendation

I recommend that the Court deny Anzures's motion.  There is no question that under the law at the time Anzures was sentenced, his commercial burglary conviction fell within the enumerated crimes clause of the ACCA.  And Anzures's two aggravated assault convictions are categorically violent felonies under the ACCA's elements clause.  Furthermore, even if the Court erred in relying on Anzures's commercial burglary conviction in determining that he was subject to the ACCA, Anzures's prior conviction for aggravated battery also qualifies as a violent felony under the ACCA's elements clause.  Thus, if the Court erred in relying on the commercial burglary conviction, any error was harmless.  Anzures is not entitled to resentencing under the Supreme Court's decision in *Johnson II*.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

Laura Fashing
United States Magistrate Judge